Marisa Rauchway Sverdlov, Esq.
**RAUCHWAY LAW LLC**
195 Fairfield Ave., Suite 4D
West Caldwell, New Jersey 07006
973-826-4098
*Attorneys for Plaintiff*
*Safa Jewelers, Inc.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| SAFA JEWELERS, INC.,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>GRAND SEIKO CORPORATION OF AMERICA, INC. and BRICE LE TROADEC.<br><br>　　　　Defendants. | Civil Action No.<br><br><br>**COMPLAINT** |

Plaintiff Safa Jewelers, Inc. ("Safa Jewelers" or "Plaintiff"), for its Complaint against Defendants Grand Seiko Corporation of America, Inc. ("Grand Seiko") and Brice Le Troadec ("Le Troadec") (together, "Defendants"), alleges as follows:

## NATURE OF THIS ACTION

1.　　Safa Jewelers has filed this lawsuit against the luxury watch manufacturer Grand Seiko and its Brand President, Brice Le Troadec, for, *inter alia*, (a) Defendants' blatant and unlawful violations of the Robinson-Patman Act, 15 U.S.C. 13 et seq. (the "Robinson-Patman Act") for the several years that Safa Jewelers was an authorized retailer of Grand Seiko products, and (b) Grand Seiko's violation of the New Jersey Franchise Practices Act, N.J.S.A.

56:10-1 et seq. (the "NJFPA") on account of Grand Seiko's unilateral termination of Safa Jewelers without proper notice or good cause.

2. Specifically, as set forth in detail below, both Grand Seiko and Le Troadec routinely and blatantly violated the Robinson-Patman Act between 2017 and 2019, by habitually providing other Grand Seiko authorized retailers -- who directly competed with Safa Jewelers for customers -- enormous promotional and price benefits on an entirely *ad hoc* basis, while failing to provide any such benefits to Safa Jewelers.

3. Defendants actions were catastrophic to Safa Jewelers' business, and resulted in substantial lost sales and competitive injury.

4. Additionally, and as also set forth in detail below, Grand Seiko's abrupt termination of Safa Jewelers as an authorized Grand Seiko retailer in October of 2019 violated the NJFPA because the relationship between Grand Seiko and Safa Jewelers is a protected franchise under the NJFPA.

5. Accordingly, because Grand Seiko failed to have any good cause to terminate Safa Jewelers, and because proper notice was not provided, Grand Seiko's termination of Safa Jewelers violated the NJFPA.

6. Therefore, Plaintiff seeks, *inter alia*, damages as a result of Defendants' unlawful conduct.

## THE PARTIES

7. Plaintiff Safa Jewelers, Inc. (defined above as "Safa Jewelers" or "Plaintiff") is a New Jersey corporation having its principal place of business at 55 Parsonage Rd #2265, Edison, NJ 08837.

8. Upon information and belief, Defendant Grand Seiko Corporation of America, Inc. (defined above as "Grand Seiko") is a New Jersey corporation with its principal place of business located at 1111 MacArthur Blvd, Mahwah, NJ 07430.

9. Upon information and belief, Defendant Brice Le Troadec ("Le Troadec") is an individual who resides in the state of New Jersey, and is the Brand President of Grand Seiko.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction based upon (a) 28 U.S.C. 1331, for civil actions arising under the Constitution, laws, or treaties of the United States, and (b) 28 U.S.C. 1367, for civil actions supplemental to a civil action for which the United States District Court has original jurisdiction.

11. Venue is proper in United States District Court for the District of New Jersey pursuant to 28 U.S.C. 1391(b)(2) and 28 U.S.C. 1391(c), because a substantial part of the events or omissions giving rise to the claims set forth herein arose in the District of New Jersey.

## FACTS GIVING RISE TO THE ACTION

12. Grand Seiko is a luxury watch manufacturer that produces some of the most expensive and sought-after time-pieces in the United States.

13. In order to sell Grand Seiko watches, Grand Seiko relies on a select network of retailer partners that Grand Seiko designates as authorized retailers of Grand Seiko timepieces.

14. Defendants have often emphasized how critical Grand Seiko's "Retail Partner[s]" are to building the Grand Seiko brand in America. Indeed, Brand President Le Troadec recently wrote the following regarding Grand Seiko's meticulously chosen points of sale:

> Grand Seiko retailers are carefully selected based upon their commitment to selling premium brands through first rate customer education, customer service, and customer experiences through their own "brick and mortars" stores and through the websites associated with those "brick and mortars" stores. Retailers that have not been approved as

authorized Grand Seiko retailers have not completed this rigorous process. . . We continue to encourage Grand Seiko retailers to report suspicious activities to our attention so that we can help preserve the investments . . . Grand Seiko retailers continue to make in the brand.

15. Up until Safa Jewelers' termination in October 2019, Safa Jewelers had for years been a part of Grand Seiko's army of retailers approved to sell Grand Seiko products.

### A. **Grand Seiko and Brand President Le Troadec Unlawfully Favored Other Retailers Over Plaintiff Throughout Safa Jewelers' Tenure As An Authorized Grand Seiko Retailer.**

16. Defendants crippled Safa Jewelers' ability to compete with other authorized Grand Seiko retailers by providing favored retailers enormous promotional, marketing and pricing terms benefits.

17. While Grand Seiko's network of premiere retail partners span across the country, each retailer competes with every other retailer for customers because of the nature of the luxury watch market.

18. In other words, Safa Jewelers sold to customers throughout the United States – and therefore competed directly with dealers throughout the United States – as Grand Seiko watch consumers routinely cross state lines to purchase Grand Seiko timepieces.

19. Grand Seiko products sold in the United States, the relevant market, are interchangeable and there is a cross-elasticity of demand due to the fact that all dealers sell Grand Seiko luxury timepieces.

20. Accordingly, because a Grand Seiko watch consumer has various dealers that can provide a Grand Seiko timepiece, Grand Seiko's favoritism and promotional/pricing support of favored dealers has a devastating effect on non-favored dealers' sales.

21. Defendants' blatant and unlawful discrimination against Safa Jewelers included, *inter alia*, the following:

a. Defendants afforded other, favored authorized Grand Seiko retailers the extraordinary marketing opportunity to install a Grand Seiko "Shop-In-Shop" – an elaborate Grand Seiko promotional installation -- in their retail location, while categorically denying Safa Jewelers the opportunity to do the same. Indeed, Le Troadec expressly told Safa Jewelers that Plaintiff would never be afforded the opportunity to have a Grand Seiko "Shop-in-Shop".

b. Defendants routinely invited other, favored authorized Grand Seiko retailers to Grand Seiko promotional events, while denying Safa Jewelers access to these same events;

c. Defendants entirely halted Safa Jewelers' ability to obtain Grand Seiko product for six months in 2018 until all credit was paid off, despite not a single item being past due and an enforceable agreement of 180 day credit terms, which favored retailers enjoyed during this period;

d. After resuming shipments in 2018, Defendants crippled Safa Jewelers by inexplicably reducing Safa Jewelers' credit from 180 to 30 days. Safa Jewelers complained of the unlawful behavior, and full credit was restored months later in 2019. Later that year, credit was once again incomprehensibly reduced to 30 day terms, and then again only restored upon Safa Jewelers' notifying Defendants that such *ad hoc* credit changes were patently unlawful.

e. Defendants flatly denied Safa Jewelers' ability to use its earned – and previously authorized – 4% co-op funds, despite every single other authorized Grand Seiko retailer being afforded this direct marketing support. Moreover, Le Troadec expressly told Safa Jewelers in early 2018 that Grand Seiko and Le Troadec would be flatly denying all co-op advertising requests from Safa Jewelers moving forward, despite offering co-op assistance to other retailers;

  f. Grand Seiko refused to permit Safa Jewelers to advertise the entire Grand Seiko product line on Plaintiff's website, while affording other retailers the right to do so; and

  g. Grand Seiko directly championed and supported certain favored retailers on social media while not providing any support to Safa Jewelers on any of these powerful consumer platforms.

**B. <u>Grand Seiko Unlawfully Terminated Safa Jewelers In Violation Of The NJFPA</u>**

22. Safa Jewelers has proudly championed the Grand Seiko brand as an authorized Grand Seiko retailer and brand partner for years at its brick-and-mortar location in Edison, New Jersey.

23. Indeed, Safa Jewelers has been critical to the development of the goodwill and brand recognition of Grand Seiko in the United States, as one of the first United States retailers to invest significant time and money into marketing the brand domestically.

24. The relationship between Safa Jewelers and Grand Seiko is reflected by several written documents and arrangements including, but not limited to, the following: a Credit Agreement confirming Safa Jewelers' 180 day credit terms in connection with Safa Jewelers'; Grand Seiko's Brand U.S. Policy Statement; and numerous written correspondence between and among the parties confirming the nature and requirements of the relationship between Safa Jewelers and Grand Seiko.

25. Grand Seiko publicized that Safa Jewelers was an authorized Grand Seiko retailer by, *inter alia*, designating Safa Jewelers on the Grand Seiko website as an authorized dealer, and permitting Safa Jewelers to advertise to the public that Safa Jewelers was an authorized Grand Seiko retailer.

26. Because Grand Seiko relies heavily on the image projected by its Grand Seiko retail network, Grand Seiko also exercised a great deal of control over Safa Jewelers while Safa Jewelers was an authorized Grand Seiko retailer.

27. For example, Safa Jewelers was repeatedly informed by Grand Seiko representatives that Safa Jewelers must maintain a minimum number of Grand Seiko timepieces on display in order to remain a Grand Seiko dealer.

28. Additionally, the Grand Seiko Brand Policy Statement also specifically required Safa Jewelers to "dedicate space and location of display of Grand Seiko watches that are superior to a majority of other brands located in the store," with the exact location subject to approval by Grand Seiko, confirming that Safa Jewelers was required to promote Grand Seiko to the detriment of other brands (which it did).

29. Safa Jewelers also made a number of other significant investments in the Grand Seiko brand, none of which hold any value now that Safa Jewelers is no longer a Grand Seiko authorized retailer.

30. For example, Safa Jewelers has spent years promoting Grand Seiko products on powerful social media platforms such as Instagram, to the detriment of other products.

31. At Grand Seiko's request, Safa Jewelers routinely promoted the brand in social media groups and engaged with countless consumers to market the benefits of Grand Seiko timepieces in contrast to other timepieces.

32. Indeed, Safa Jewelers has, for several of its customers, successfully encouraged these customers to purchase Grand Seiko products over other timepieces.

33. Safa Jewelers has also engaged in Grand Seiko-specific non-digital, traditional advertising, promoting Grand Seiko to the detriment of other timepieces.

34. The loss of the Grand Seiko brand is therefore catastrophic, as Safa Jewelers as spent years directly promoting Grand Seiko to its customers over other timepieces.

35. Additionally, Grand Seiko consumers view Safa Jewelers as an "arm" of the Grand Seiko company, and have even treated Safa Jewelers in written correspondence as a representative of Grand Seiko.

36. Plaintiff purchased well over $35,000 Grand Seiko product in the last twelve months and the twelve months prior to the termination, and well over twenty (20) percent of Plaintiff's gross sales were intended to be or are derived from the franchise relationship.

37. Furthermore, if Defendants had not unlawfully decimated Safa Jewelers' sales as a result of the discriminatory behavior alleged above, Safa Jewelers' Grand Seiko sales would have been a substantially greater percentage of Plaintiff's gross sales.

38. Despite Safa Jewelers' tireless and brand-specific efforts, in mid-October 2019, Grand Seiko abruptly -- and without good cause or proper notice -- terminated Safa Jewelers as a Grand Seiko authorized retailer and cancelled all of its pending customer orders.

## COUNT I

**(VIOLATION OF THE ROBINSON-PATMAN ACT, 15 U.S.C. 13)**
**(Against All Defendants)**

1. Plaintiff repeats and realleges each of the preceding allegations as though fully set forth at length herein.

2. Defendants' conduct, as described in detail above, constitutes discriminatory promotional practices and price discrimination in violation of the Robinson-Patman Act, 15 U.S.C. 13.

3. Defendants made two or more sales to Plaintiff, and at least one other retailer who competes with Plaintiff (the "Favored Retailers), of commodities of like grade and quality for resale in interstate commerce.

4. Plaintiff competes with the Favored Retailers in the same competitive market and geographic area and at the same functional level.

5. The sale of commodities by Defendants to Plaintiff and Favored Retailers were made reasonably close in time.

6. To facilitate the resale of these commodities, Defendants, either directly or through an intermediary, has paid for and/or furnished promotional services and/or facilities to the Favored Retailers without making such payments, services and/or facilities available to Plaintiffs on proportionally equal terms.

7. Defendants have also engaged in acts of price discrimination as set forth above, including, but not limited to, providing Favored Retailers certain price terms while, on an *ad hoc* basis, not providing the same price terms to Plaintiff.

8. Defendants' discriminatory conduct has resulted in competitive injury to Plaintiff by unduly restraining, hindering, suppressing and and/or eliminating competition between Plaintiff and the Favored Retailers in the sale and distribution of commodities in interstate commerce.

9. Under 15 U.S.C. 15, Plaintiff is entitled to recover from Defendants threefold the damages sustained and the cost of suit, including reasonable attorney's fees.

**COUNT II**

**(VIOLATION OF THE NEW JERSEY FRANCHISE PRACTICES ACT)**
**(Against Grand Seiko)**

1. Plaintiff repeats and realleges each of the preceding allegations as though fully set forth at length herein.

2. The relationship between Plaintiff and Grand Seiko is a franchise as that term is defined under the New Jersey Franchise Practices Act, N.J.S.A. 56:10-3, including that (a) a written arrangement exists between Plaintiff and Grand Seiko; (b) Grand Seiko granted Plaintiff a license to use its intellectual property, and (c) there is a community of interest between Plaintiff and Grand Seiko.

3. Furthermore, the franchise relationship at issue here is subject to the protections of the New Jersey Franchise Practices Act, as set forth under N.J.S.A. 56:10-4, because (a) the written arrangements and performance of the franchise contemplate a place of business in New Jersey, (b) Plaintiff purchased well over $35,000 Grand Seiko product in the last twelve months and the twelve months prior to the attempted termination, and (c) well over twenty (20) percent of Plaintiff's gross sales were intended to be or are derived from the franchise relationship.

4. As such, pursuant to the NJFPA, N.J.S.A. 56:10-5, Grand Seiko could not have terminated the relationship between the parties unless it provided Plaintiff (a) sixty days notice, (b) identified good cause, and (c) provided an opportunity to cure.

5. Grand Seiko's actions herein are a violation of the NJFPA.

6. As a consequence of the breaches and violations set forth herein, Plaintiff has been damaged.

## COUNT III

### (BREACH OF CONTRACT)
### (Against Grand Seiko)

1. Plaintiff repeats and realleges each of the preceding allegations as though fully set forth at length herein.

2. Plaintiff and Grand Seiko entered into an enforceable agreement whereby Grand Seiko agreed to provide Plaintiff one hundred eighty day (180) day credit terms for Plaintiff's resale of Grand Seiko product to the consuming public.

3. Plaintiff fully performed in accordance with the agreement.

4. Grand Seiko breached the agreement by arbitrarily removing Plaintiff's one hundred eighty day (180) credit terms.

5. As a direct result of Grand Seiko's conduct, Plaintiff has been damaged.

## COUNT IV

### (BREACH OF GOOD FAITH AND FAIR DEALING)
### (Against Grand Seiko)

1. Plaintiff repeats and realleges each of the preceding allegations as though fully set forth at length herein.

2. There exists in every contract an implied covenant of good faith and fair dealing.

3. Thus, such a covenant exists in any agreement between Plaintiff and Grand Seiko.

4. Here, Grand Seiko has violated this covenant by, among other actions, arbitrarily removing Plaintiff's one hundred eighty day (180) credit terms.

5. As a consequence, Plaintiff has been damaged.

## COUNT V

### (TORTIOUS INTERFERENCE)
### (Against Grand Seiko)

1. Plaintiff repeats and realleges each of the preceding allegations as though fully set forth at length herein.

2. Plaintiff had a reasonable expectation of economic advantage to continue business with its current Grand Seiko customers and to obtain new business with potential customers.

3. Through the unlawful and malicious conduct described herein, Grand Seiko has intentionally and maliciously interfered with Plaintiff's prospective economic advantage.

4. As a direct and proximate result, Plaintiff has been damaged.

WHEREFORE, Plaintiff demands judgment, granting it:

A. Compensatory damages in an amount to be determined at trial;

B. The trebling of damages;

C. Punitive damages.

D. Costs of suit, reasonable attorneys' fees, and other costs permitted by law.

E. Such other relief as to the Court appears just and proper.

RAUCHWAY LAW LLC
*Attorneys for Plaintiff*
*Safa Jewelers, Inc.*

By:   */s/* Marisa Rauchway Sverdlov
        MARISA RAUCHWAY SVERDLOV

Dated: December 23, 2019

## JURY DEMAND

Safa Jewelers demands trial by jury of all claims and defenses in this action so triable.

RAUCHWAY LAW LLC

*Attorneys for Plaintiff*
*Safa Jewelers, Inc.*

By:   */s/* Marisa Rauchway Sverdlov

MARISA RAUCHWAY SVERDLOV

Dated: December 23, 2019

## LOCAL RULE 11.2 CERTIFICATION

The matter in controversy is not the subject of any other action pending in any other court or any pending arbitration or administrative proceeding.

RAUCHWAY LAW LLC

*Attorneys for Plaintiff*
*Safa Jewelers, Inc.*

By:   */s/* Marisa Rauchway Sverdlov

MARISA RAUCHWAY SVERDLOV

Dated: December 23, 2019